Melvin WILLUWEIT, Plaintiff and Respondent,

v.

W. E. BARTHOLOW & SONS CONSTRUCTION COMPANY, Defendant and Appellant.

No. 12205.

Supreme Court of South Dakota.

Sept. 28, 1978.

**60**

Gary E. Davis of Johnson, Johnson & Eklund, Gregory, for plaintiff and respondent.

Glenn A. Fingerson, Huron, for defendant and appellant; Eugene L. Martin of Benson, Wehde & Martin, Huron, on the brief.

WOLLMAN, Chief Justice.

This is an appeal from a judgment entered on a jury verdict in favor of plaintiff against appellant. We affirm in part, reverse in part and remand for modification of the judgment.

In the fall of 1973, plaintiff entered into a subcontract with appellant for the completion of certain road work near Burke Lake in Gregory County, appellant having earlier entered into a contract with the South Dakota Highway Department for the overall construction of the project. Because the project was only some 2.1 miles in length, appellant's contract with the Highway Department provided for payment on the basis of linear stations completed rather than on the basis of cubic yards moved. The project was divided into 110.8 linear stations, each 100 feet in length.

Because the project was bid by appellant on a linear station basis, the cubic yardage to be moved was not computed by the state's engineers on the basis of exact cross sections but rather was estimated for informational purposes only at approximately 17,000 cubic yards. Accordingly, the agreement between plaintiff and appellant provided in part that, "[a]ny changes ordered at the direction of the S.D.D.H. Engineer, particularly yardage in excess of approximately 17,000 c. yd., will be subject to negotiation between the parties to this agreement."

Another portion of the written agreement between plaintiff and appellant included as an item of work, "salvage top soil (2500 yd.)" at a price of eighty cents per yard, for a total price of $2,000. The agreement bore the notation, "[a]ll quantities are approximate and subject to change at the direction of S.D.D.H."

Upon the completion of the project, state engineers cross sectioned the borrow pit from which soil had been excavated to build the grade and computed the overrun on the cubic yardage moved at 9,569.1 yards. The state engineers also computed the topsoil salvaged at 4,285.9 yards. Appellant tendered payment to plaintiff on the basis of fifty cents per cubic yard for the 9,569.1 yards of overrun and fifty cents per yard for replacing the 4,285.9 yards of topsoil that had been removed from the shoulders and ditches of the road. Plaintiff brought suit, claiming that he was entitled to be paid at the rate of seventy cents per yard for 18,000 additional cubic yards of earth moved and eighty cents per yard for replacing the 4,285.9 yards of topsoil. Plaintiff made additional claims for payment, but we do not consider them to be of sufficient significance to warrant further discussion.

■ The basis for plaintiff's claim of additional compensation was his allegation that he and appellant's officers had entered

into an oral agreement during the course of construction that plaintiff was to receive payment at the rate of seventy cents per cubic yard for all earth moved in excess of the 17,000 cubic yard estimate. According to plaintiff, this additional yardage was to be determined by multiplying the number of scraper loads of earth moved by the average number of cubic yards carried in each load.

Appellant contends that the agreement was for the payment of fifty cents per cubic yard of excess earth moved and that there was no agreement that the excess yardage would be computed on the basis of scraper loads. Appellant's officers conceded at trial that they had asked plaintiff to keep track of the number of scraper loads, but they testified that this was solely for the purpose of measuring plaintiff's rate of progress in completing the project. Appellant attempted to prove that measurement of amount of earth moved by counting the number of scraper loads transported is inherently unreliable because of a "shrinkage factor" caused by the difference in the compaction of earth in its undisturbed state and as found in a scraper after loading. Appellant's witness testified that the only accurate way to calculate cubic yardage of earth moved is through cross sectioning (measuring by way of survey) the area from which earth is removed.

Without further detailing the conflicting testimony regarding the agreement between the parties concerning the manner in which the excess yardage was to be computed or the rate at which plaintiff was to be compensated for moving it, we conclude that after viewing the evidence in the light most favorable to the verdict and giving plaintiff the benefit of every legitimate inference that the jury could draw therefrom, *Vander Vorste v. Northwestern Nat. Bank,* 81 S.D. 566, 138 N.W.2d 411; *Bentz v. Cimarron Insurance Co.,* 79 S.D. 510, 114 N.W.2d 96, we cannot say that the evidence was insufficient to justify a verdict in favor of plaintiff on this portion of his claim.

We conclude, however, that there was insufficient evidence to support plaintiff's claim that he was entitled to eighty cents per cubic yard for replacing the topsoil that had been removed and stock piled prior to the grading operation. Although the tenor of plaintiff's direct testimony on this issue was that it was his understanding that he was to receive eighty cents per yard to replace the topsoil, on cross examination he acknowledged that he had never had any discussion with any of appellant's officers about replacing the topsoil or the price that he was to be paid for doing so. One of plaintiff's witnesses, the state highway engineer who supervised the Burke Lake project, testified on cross examination that eighty cents per cubic yard was a reasonable figure for removing, stock piling and replacing the topsoil. In the light of plaintiff's vague, contradictory, and ambiguous testimony, we conclude that plaintiff failed to introduce sufficient evidence from which the jury could reasonably have found that there was an agreement between plaintiff and appellant that plaintiff should be paid eighty cents per cubic yard for replacing the topsoil. Accordingly, the judgment must be modified to strike that portion of the award.

Appellant's contention that there was insufficient evidence to justify the award of damages for certain of plaintiff's remaining claims is without merit.

Insofar as the judgment reflects an award of damages for replacing the topsoil, it is reversed. With respect to the award of damages for the remainder of plaintiff's claims, the judgment is affirmed. The case is remanded to the circuit court with directions to modify the judgment in accordance with the views set forth in this opinion.

All the Justices concur.